UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAKESHORE TECHNICAL COLLEGE,

        Plaintiff,

    v.                                              Case No. 24-C-1290

ANTHOLOGY INC.,

        Defendant.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS**

---

This case presents a threshold jurisdictional question of whether Plaintiff Lakeshore Technical College is an arm of the State of Wisconsin. Lakeshore brought a civil action in the Circuit Court for Manitowoc County against Defendant Anthology, Inc., alleging three state-law claims arising out of Lakeshore's contract with Anthology for the purchase of computer software. On October 10, 2024, Anthology filed a notice removing the case to this court, asserting diversity jurisdiction under 28 U.S.C. § 1332 as grounds for removal. A week later, Anthology moved to dismiss Lakeshore's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). On November 7, 2024, Lakeshore timely moved to remand the action back to state court on the ground that Lakeshore is an arm of the State of Wisconsin, not a citizen of the State, and thus not subject to the court's diversity jurisdiction under 28 U.S.C. § 1332. Lakeshore also seeks costs and attorney's fees associated with removal pursuant to 28 U.S.C. § 1447(c). Both motions have been fully briefed and are ripe for the court's adjudication. For the following reasons, Lakeshore's motion to remand will be denied and Anthology's motion to dismiss, construed as a motion to transfer pursuant to 28 U.S.C. § 1404(a), will be granted.

## BACKGROUND

Lakeshore is a public technical college located in Cleveland, Wisconsin.  Compl. ¶ 7, Dkt. No. 1-1.  Anthology is a software company incorporated in Florida, with its principal place of business in Boca Raton, Florida.  *See id.* ¶ 8.  In 2021, Lakeshore needed to update or replace its Enterprise Resource Planning (ERP) software as its legacy system, PeopleSoft ERP, was at "end of life."  *Id.* ¶ 14.  So, Lakeshore and two other Wisconsin technical colleges issued a Request for Information (RFI)—a solicitation that asks perspective vendors to share information about their products.  *Id.*  The RFI and subsequent communications made it clear that Lakeshore required the new ERP system to "go-live" within two years because their legacy software was nearing obsolescence.  *Id.* ¶ 15.  On January 5, 2022, Anthology responded to Lakeshore's RFI.  *Id.* ¶ 17.  Anthology represented it had the experience and "expertise to migrate Lakeshore from the legacy PeopleSoft system to [its] system," meet Lakeshore's unique system requirements, and "ensure that Lakeshore would be live with its ERP system within two years of contracting."  *Id.* ¶¶ 16–18.  In June and July 2022, Lakeshore and Anthology contracted for implementation of Anthology's ERP software.  *Id.* ¶ 19; *see generally* Master Agreement, Dkt. No. 30-1.

Lakeshore alleges that the deal was "an abject failure."  Compl. ¶ 21.  By Lakeshore's account, there were multiple shortcomings: Anthology's software was riddled with unfixable issues forcing Lakeshore to continue using its legacy software; Anthology failed to adequately staff the project; Anthology consistently failed to meet implementation milestones; and Anthology was unsuccessful in remediating issues and restoring Lakeshore's confidence in the project.  *Id.* ¶¶ 21–24.  Lakeshore complains its "educational mission has been disrupted, its resources sapped, . . . and it has incurred significant damages that will continue to increase."  *Id.* ¶ 25.  Thus, on September 12, 2024, Lakeshore filed suit against Anthology in the Circuit Court for Manitowoc

County, alleging three claims: (1) fraud in the inducement; (2) violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18; and (3) breach of contract.

## ANALYSIS

**A.     Lakeshore's Motion to Remand**

Lakeshore has moved to remand this action back to the Circuit Court for Manitowoc County pursuant to 28 U.S.C. § 1447(c) on the ground that this court lacks jurisdiction over it.  In its notice of removal, Anthology alleged that federal jurisdiction exists under 28 U.S.C. § 1332(a), which provides that "district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  In support of its claim that this court had jurisdiction, Anthology alleged that it is a citizen of the State of Florida, Lakeshore is a citizen of the State of Wisconsin, and that the amount in controversy exceeds $75,000.  Lakeshore does not dispute that the amount in controversy far exceeds the sum of $75,000 but contends that the court lacks jurisdiction over the action because it is not between citizens of different States.  Lakeshore contends that it is an arm of the State of Wisconsin, not a citizen of the State, and therefore the court lacks jurisdiction under § 1332(a)(1).

"There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."  *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973).  However, "a political subdivision of a State, unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes."  *Id.* (internal quotations and footnote omitted).  The threshold question, then, is whether Lakeshore is an arm or alter ego of the State of Wisconsin, and thus not a citizen. For unless Lakeshore is a citizen of the State of Wisconsin and not the State itself, this court lacks jurisdiction.

3

The question of whether a party to a lawsuit is an "arm of the State" can arise in several different contexts. It can arise, as here, where federal diversity jurisdiction is in question. It more commonly arises in the context of a party claiming immunity from liability for damages under the Eleventh Amendment. *See, e.g.*, *Adden v. Middlebrooks*, 688 F.2d 1147 (7th Cir. 1982); *DuPage Regional Office of Ed. v. United States Dept. of Ed.*, 58 F.4th 326, 337 (7th Cir. 2023). It can also arise in a civil rights action when determining whether an entity is a "person" within the meaning of 42 U.S.C. § 1983. *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 926 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). Regardless of the context in which it arises, however, the analysis is essentially the same. *Adden*, 688 F.2d at 1150, 1153–54 (applying the same test to Eleventh Amendment and diversity jurisdiction inquiries); *see also Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1203 (1st Cir. 1993) ("The criteria are substantially similar for evaluating whether an entity is a citizen of the State for diversity purposes, or a State for Eleventh Amendment sovereign immunity purposes . . . .").

In *DuPage Regional Office of Education*, the Seventh Circuit examined its own and other circuits' decisions addressing the issue and concluded that, consistent with the Supreme Court's view of intent underlying the Eleventh Amendment, the primary consideration in deciding whether an entity created by a State is an arm of the State is whether the State would be legally liable for a judgment entered against it:

> As the courts of appeals have developed this well-trod path, the Supreme Court has confirmed the primacy of legal liability in the analysis, observing that "prevention of federal-court judgments that must be paid out of a State's treasury" was the "impetus for the Eleventh Amendment." Therefore, the Court has instructed that "[w]hen indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being"—protecting States' dignity and financial solvency—"remain our prime guide."

58 F.4th at 341 (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48, 39–40 (1994)) (cleaned up).  In other words, if the State would be liable for any judgment entered against the entity, the entity is more likely an arm of the State.

The court also noted in *DuPage Regional Office of Education* that, like most courts, it had generally held that a "local school district ordinarily is not a 'State' and hence may be sued in federal court." *Id.* (quoting *Gary A. v. New Trier High Sch. Dist. No. 203*, 796 F.2d 940, 945 (7th Cir. 1986)).  The Supreme Court so held in *Mount Healthy School District v. Doyle* in rejecting the District's argument in that case that it was entitled to Eleventh Amendment immunity from a teacher's lawsuit as an "arm of the State" under Ohio law.  429 U.S. 274, 280 (1977).  In reaching this conclusion, the Court noted that "[u]nder Ohio law the 'State' does not include 'political subdivisions,' and 'political subdivisions' do include local school districts." *Id.* (citing Ohio Rev. Code Ann. § 2743.01).  The Court further noted that although the District was subject to state regulation and received a significant amount of money from the State, local school boards had extensive powers to issue bonds and to levy taxes within certain restrictions of state law. *Id.*  "On balance," the Court concluded, "the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State." *Id.*  The Court therefore held it was not an arm of the State entitled to assert any Eleventh Amendment immunity from suit in the federal courts. *Id.* at 281.  The same conclusion follows here.

Lakeshore is a two-year technical college located in one of the sixteen technical college districts established and regulated by Chapter 38 of the Wisconsin Statutes.  *See* Wis. Stat. § 38.02 ("There is established under this chapter a system of technical colleges . . . .").  Chapter 38 was enacted "to provide a system of technical colleges which enable[] eligible persons to acquire the occupational skills training necessary for full participation in the work force." *Id.* § 38.001(1).  To

5

accomplish this goal, the legislature divided the State into separate geographical technical college districts that "include one or more counties, municipalities or school districts in any contiguous combination." *Id.* §§ 38.01(5), 38.06(1). Lakeshore is located in the "Lakeshore district," which is made up of Calumet, Manitowoc, Ozaukee, and Sheboygan counties. *Lakeshore College District Board*, LAKESHORE COLLEGE, https://gotoltc.edu/about/college-leadership/district-board (last visited May 30, 2025); *see also* Ciani Decl., Ex. A at 2, Dkt. No. 28-1.

Except as otherwise provided by law, a nine-member board overseeing each district has "exclusive control of the district schools established by it and of property acquired for the use of such schools." Wis. Stat. § 38.12(1). The members of each district board, other than the district board governing the Milwaukee Area Technical College, must be residents of the district and include two employers, two employees, three additional members, a school administrator, and an elected official who holds state or local office. *Id.* § 38.08(1)(a). The members of each district board are appointed by an appointment committee, which is comprised of elected officers of the school boards or counties within the district. *Id.* § 38.10(1). The district board has the power to enter into contracts, borrow money, and sue and be sued in its own name. *Id.* §§ 38.14(1)–(3). Although it receives some portion of its funding from the State, the district board also levies a tax on the full value of property within the district. *Id.* § 38.16. The balance of its revenue is from tuition and federal and state grants.

Critically, technical colleges in Wisconsin do not belong to the State. Subject to exception not relevant here, "upon the creation of a district the property, assets, claims, contracts, obligations, rights, duties and liabilities relating and pertaining to the existing technical colleges in the territory included in the district shall become the property, assets, claims, contracts, obligations, rights, duties and liabilities of the district." *Id.* § 38.20(1). In sum, technical school districts under

Wisconsin law are analogous to public school districts in general. And just as the State of Wisconsin would not incur liability for any judgment entered against a school district or a school owned and operated by a school district, it would not incur liability for a judgment entered against Lakeshore or the Lakeshore district. In light of this fact and considering the statutory framework for technical college districts in the State of Wisconsin, Lakeshore is not an arm of the State for diversity purposes.

Lakeshore spends much of its brief in support of its motion to remand the case focusing on the statutes governing the Wisconsin Technical College System and its powers and duties through the Wisconsin Technical College System Board (the WTCS Board). But Lakeshore is not the WTCS Board, and the WTCS Board is not a party to this case. The WTCS Board oversees the operation of the technical colleges. In general, its duties include determining the organization, plans, scope, and development of technical colleges; establishing criteria for state aid, credit determination, and other purposes; and classifying and naming the district schools. *Id.* § 38.04(1). It does not own or operate Lakeshore or any of the other technical schools within the State. It thus follows that whether the WTCS Board is an arm of the State is irrelevant.

For the reasons set forth above, the court concludes that Lakeshore is not an arm of the State of Wisconsin but instead a citizen of the State. Because Anthology is a citizen of the State of Florida, complete diversity exists, and the court has jurisdiction under 28 U.S.C. § 1332(a)(1). Lakeshore's motion to remand the case back to the Circuit Court for Manitowoc County is therefore denied.

**B.      Anthology's Motion to Dismiss**

Anthology has moved to dismiss Lakeshore's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, (b)(3) for improper venue, and (b)(6) for

failure to state a claim upon which relief can be granted. The court will begin and end its analysis on the issue of venue since, together with personal jurisdiction, it is also a threshold issue, and both are based on the same provision of the contract between the parties. That provision reads:

> 16.2 Jurisdiction; Venue. If the Parties are unable to reconcile their differences in accordance with the procedures specified in Section 16.1, each Party hereby agrees that any controversy or claim, whether based on contract, tort or other legal theory, arising out or relating to this Agreement, shall be maintained exclusively in the jurisdiction and venue of the courts sitting in and for Palm Beach County and the Southern District of Florida. The prevailing Party shall be entitled to reimbursement of reasonable attorneys' fees and costs. The Parties expressly waive right to trial by jury.
>
> The foregoing choice of venue shall not apply to publicly funded state institutions to the extent applicable state laws expressly prohibit the institution from litigating outside of its home state.

Master Agreement ¶ 16.2. Anthology argues on the basis of this provision that Lakeshore's action against it should be dismissed for lack of personal jurisdiction and improper venue. Although Anthology's argument over personal jurisdiction is questionable, it is true that the venue chosen by Lakeside is not the one to which the parties agreed in the contract.

In *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, the Supreme Court made clear that, absent exceptional circumstances, a forum selection clause should be given effect. 571 U.S. 49, 62 (2013). In so ruling, however, the Court held that "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Id.* at 59. Instead, where a forum selection clause authorizes the litigation in a specific federal forum, it "may be enforced through a motion to transfer under § 1404(a)." *Id.* That section provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

8

"Ordinarily," the Court explained, "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62–63 (quoting 28 U.S.C. § 1404(a)). But the calculus changes when the parties' contract contains a forum-selection clause. *Id.* at 63. Because a valid forum-selection clause protects the parties' "legitimate expectations and furthers vital interests of the justice system," it "should be given controlling weight in all but the most exceptional cases." *Id.* (quoting another source) (cleaned up). Specifically, the Court in *Atlantic Marine* observed two ways in which the calculus changes that are relevant here. First, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court is not to consider the parties' arguments about private interests—they waived these arguments when they agreed to the forum-selection clause. *Id.* at 64. Stated differently, "when a forum-selection clause is in play, the analysis is limited to public-interest factors." *Mueller v. Apple Leisure Corp.*, 800 F.3d 890, 894 (7th Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 64).

Application of the forgoing calculus is contingent upon the forum-selection clause being mandatory and enforceable. A forum-selection clause is mandatory where it vests jurisdiction and venue exclusively in the place specified. *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022). Language like "shall be litigated" or "will be litigated" is mandatory. *Id.*; *see also Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (holding that "[j]urisdiction and venue over any disputes arising out of this agreement shall be proper only in the federal or state courts in Dallas County, Texas" is mandatory language). There can be no doubt, the clause at issue here is mandatory. It reads in plain terms that "any controversy or claim . . . arising out or relating to this Agreement, *shall be maintained exclusively* in the jurisdiction and

9

venue of the courts sitting in and for Palm Beach County and the Southern District of Florida." Master Agreement ¶ 16.2 (emphasis added).

Unable to contest the mandatory nature of the forum-selection clause, Lakeshore resorts to challenging its enforceability on two separate grounds. First, Lakeshore argues that an exception renders the clause inapplicable. That exception provides: "The foregoing choice of venue shall not apply to publicly funded state institutions to the extent applicable state laws expressly prohibit the institution from litigating outside of its home state." *Id.* But Lakeshore's argument on this point rests entirely on its assertion that it is an arm of the State. Because the court has concluded that Lakeshore is not an arm of the State, the exception does not apply.

Lakeshore next argues that the forum-selection clause in unenforceable because the Master Agreement was procured by fraud. As a threshold matter, the court must apply federal law in determining whether the forum-selection clause is enforceable, not state law as Lakeshore suggests. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 608 (7th Cir. 2006) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 373–74 (7th Cir. 1990)). Under federal law, "a forum selection clause will be enforced unless it can be clearly shown 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Muzumdar,* 438 F.3d at 762 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Importantly, the court's focus is on the clause itself, not the agreement as a whole. *Id.* ("Appellants make no attempt to show that the forum selection clause was itself obtained by fraud."). Here, Lakeshore, relying on a state-law theory, argues that the Master Agreement as a whole was procured by fraud. Lakeshore does not, however, offer any argument calling into question the forum-selection clause itself. Accordingly, the clause is not unenforceable on the basis of fraud. *Id.*; *see also AB Data*

*Ltd v. Ricoh USA Inc*, No. 23-CV-0978-BHL, 2024 WL 343301, at *3–4 (E.D. Wis. Jan. 30, 2024). In sum, the forum-selection clause in the parties' Master Agreement is both mandatory and enforceable.

The court therefore returns to the 28 U.S.C. § 1404(a) calculus as modified by *Atlantic Marine*. Lakeshore does not explicitly proffer any public-interest arguments. And if it had, it is unlikely they would overcome the forum-selection clause. *See Mueller*, 880 F.3d at 894 ("[Public-interest] factors are 'rarely' strong enough to override the parties' preselected forum." (quoting *Atl. Marine*, 571 U.S. at 64)). The forum-selection clause in the parties' Master Agreement will therefore be given "controlling weight." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc.*, 487 U.S. at 33). Accordingly, construing Anthology's motion as a motion to transfer pursuant to 28 U.S.C. § 1404(a), the court will give effect to the parties' forum-selection clause and transfer this case to the United States District Court for the Southern District of Florida.

## CONCLUSION

For these reasons, Lakeshore's motion to remand (Dkt. No. 17) is **DENIED**. Anthology's motion to dismiss (Dkt. No. 8), construed as a motion to transfer pursuant to 28 U.S.C. § 1404(a), is **GRANTED**. The Clerk is directed to transfer this case to the United States District Court for the Southern District of Florida.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of May, 2025.

William C. Griesbach
United States District Judge